PEOPLE v J D WILLIAMS

Docket No. 63550. Submitted March 30, 1982, at Lansing.—Decided June 23, 1982.

J. D. Williams and another were charged with first-degree murder and felony-firearm. His codefendant was acquitted and Williams was convicted of being an accessory after the fact and of felony-firearm, Recorder's Court of Detroit, Dalton A. Roberson, J. Defendant appealed and the Court of Appeals reversed his conviction (Docket No. 52716, decided June 23, 1981 [unreported]). Upon the prosecutor's application for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the Court of Appeals and remanded the case for consideration of the issues not previously addressed. 412 Mich 711 (1982). On remand, *held:*

1. A statement made to the police by a witness and the testimony of that witness at the preliminary examination were properly read into evidence at trial when the witness claimed lack of memory.

2. The trial court did not err in its instruction to the jury regarding the prosecution's burden of proof. The instruction was not objected to and correctly stated the law.

3. The evidence was sufficient to convict the defendant as an accessory after the fact. Further, the fact that the principal was acquitted does not preclude the defendant's conviction as an accessory after the fact.

4. The conviction of felony-firearm was erroneous, as it was based on his moving and hiding a gun. Thus he did not carry or possess a firearm while committing a felony. The underlying crime, the alleged murder, was completed by the time the defendant transported the gun.

Affirmed in part, reversed in part.

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 834, 876, 877.
[2] 29 Am Jur 2d, Evidence §§ 749, 753.
[3] 5 Am Jur 2d, Appeal and Error § 623.
[4] 5 Am Jur 2d, Appeal and Error §§ 831, 883.
[5-8] 21 Am Jur 2d, Criminal Law § 174.
[8] 21 Am Jur 2d, Criminal Law § 267.

1. Evidence — Hearsay — Recorded Recollection.

   A document admitted into evidence under the recorded recollection exception to the hearsay rule must meet three requirements: (1) The document must pertain to matters about which the declarant once had knowledge; (2) The declarant must now have an insufficient recollection as to such matters; and (3) The document must be shown to have been made by the declarant or, if made by another, to have been examined by the declarant and shown to accurately reflect the declarant's knowledge when the matters were fresh in his memory (MRE 803[5]).

2. Witnesses — Unavailable Witness — Evidence.

   A witness may be considered unavailable because of a lack of memory and his prior testimony may then be admitted into evidence where that testimony was given at a proceeding wherein the opposing party had the opportunity of cross-examination (MRE 804[a][3], 804[b][1]).

3. Appeal — Jury Instructions.

   A trial court's jury instructions will not be found to be erroneous where no objection to the instructions was made at trial and the instructions given did not misstate the law.

4. Criminal Law — Sufficiency of Evidence — Standard of Review.

   The standard of review in determining whether sufficient evidence was presented to support a defendant's conviction is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

5. Criminal Law — Accessory After the Fact.

   An accessory after the fact is one who, with knowledge of the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial, or punishment.

6. Criminal Law — Accessory After the Fact.

   The conviction of the principal is not a necessary condition precedent to the conviction of an accessory after the fact.

7. Criminal Law — Accessory After the Fact.

   Taking a wounded felon to a hospital is not construed as giving assistance to hinder his being apprehended.

8. Criminal Law — Accessory After the Fact — Felony-Firearm.

   A defendant who was convicted as an accessory after the fact based upon his actions in secreting the gun used by the principal did not thereby carry or possess a firearm while committing

a felony for purposes of a violation of the felony-firearm statute
(MCL 750.227b; MSA 28.424[2]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *David G. Edick,* Assistant Prosecuting Attorney, for the people.

*Robert E. Slameka,* for defendant on appeal.

Before: R. M. MAHER, P.J., and M. J. KELLY and R. B. BURNS, JJ.

PER CURIAM. Defendant and another man were charged with first-degree murder or first-degree felony murder contrary to MCL 750.316; MSA 28.548 and possession of a firearm in the commission of or attempt to commit a felony, MCL 750.227b; MSA 28.424(2). At the joint trial, the trial court granted a directed verdict of acquittal as to the codefendant. The jury found J. D. Williams guilty of being an accessory after the fact and possession of a firearm. He was sentenced to two to five years as an accessory after the fact and two years for the possession of a firearm. Defendant raises four issues on appeal.

On Friday evening, September 21, 1979, James Sammons died of gunshot wounds he had received earlier that evening. Several witnesses observed and testified about the events of the evening leading up to the shooting incident which took Mr. Sammons' life. Sammons and three other men had been playing cards at Sammons' office after hours. Defendant and another man knocked at the door. Sammons went to the door. Defendant and the other man were seen talking with Sammons from the adjoining room. When the man who accompa-

nied defendant began to write something on a piece of paper, the card players went back to their cards. Seconds later, they heard shooting. After the shooting stopped, Sammons was found lying on the floor. The card players did not see any part of the shooting incident. They had not seen a gun being carried by either defendant or the other man.

The first issue presented is whether the trial court erred in allowing the statement and prior testimony of witness Stanley Williams to be read into evidence after he claimed lack of memory. MRE 803(5) states:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * *

"(5) *Recorded recollection.* A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."

In *Kubasiak,* 98 Mich App 529, 536-537; 296 NW2d 298 (1980), this Court set forth the foundational requirements necessary to admit into evidence a memorandum or writing under the hearsay exception for recorded recollections:

"Documents admitted pursuant to this rule must meet three requisites: (1) The document must pertain to matters about which the declarant once had knowledge; (2) The declarant must now have an insufficient recollection as to such matters; (3) The document must be shown to have been made by the declarant or, if made

by one other than the declarant, to have been examined by the declarant and shown to accurately reflect the declarant's knowledge when the matters were fresh in his memory. *United States v Edwards,* 539 F2d 689, 691-692 (CA 9, 1976), *cert den* 429 US 984; 97 S Ct 501; 50 L Ed 2d 594 (1976), and *United States v Williams,* 571 F2d 344, 348 (CA 6, 1978), interpreting FRE 803(5) which is identical to MRE 803(5). See, generally, *Moncrief v Detroit,* 398 Mich 181, 189-190; 247 NW2d 783 (1976)."

These requirements were satisfied in the instant case. The statement at issue deals with a meeting and conversation between Stanley Williams and defendant on the night of the alleged accident. Stanley Williams explicitly stated that he had no present recollection of the events that evening. Officer Kuhnlein testified that Stanley Williams made the statement, read, and signed it. Stanley Williams testified that he did recall making a statement and that he was telling the truth when he made it, although he could not remember its contents. He stated that several accidents had affected his memory. He also verified that the signature on the statement was his. Where the requirements of MRE 803(5) were satisfied, the statement properly was read into evidence.

The prior testimony of Stanley Williams given at the preliminary examination also was properly read into evidence. MRE 804(a)(3) and MRE 804(b)(1) state:

"(a) *Definition of unavailability.* 'Unavailability as a witness' includes situations in which the declarant—

\*    \*    \*

"(3) has a lack of memory of the subject matter of his statement; or

\*    \*    \*

"(b) *Hearsay exceptions.* The following are not ex-

cluded by the hearsay rule if the declarant is unavailable as a witness:

"(1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."

MRE 804(a)(3), which allows a witness to be considered "unavailable" because of lack of memory, is consistent with prior Michigan law, MCL 768.26; MSA 28.1049, *People v Thomas,* 61 Mich App 717; 233 NW2d 158 (1975).

Stanley Williams stated at trial that he had testified previously concerning this matter. He stated that he was telling the truth to the best of his ability. He further testified that he had read the preliminary examination transcript, but it failed to refresh his memory. The court reporter from the preliminary examination was called to testify and read into evidence the prior testimony of Stanley Williams. Defendant's counsel did cross-examine Stanley Williams at the preliminary examination. Therefore, the prior testimony properly was admitted under MRE 804(b)(1).

In conclusion, both the statement made by Stanley Williams and his prior testimony at the preliminary examination properly were admitted by the trial court.

The second issue is whether the instruction given by the trial court on the prosecutor's burden, when the evidence is both direct and circumstantial, was erroneous.

This case involves both direct and circumstantial evidence. The instruction given by the judge

was taken verbatim from CJI 3:1:10, entitled "Mixed Direct and Circumstantial Evidence". Further, defendant's attorney agreed to these instructions before they were given.

This same issue was raised in *People v Jackson,* 100 Mich App 146; 298 NW2d 694 (1980). In *Jackson,* as in the case at bar, no objection was made to the instructions given. This Court stated:

> "Defendants' argument misses the mark. Even assuming, *solely* for purposes of argument, that the instruction they contend should have been given accurately reflects the state of the law in this jurisdiction, the trial court is not required to *sua sponte* give such an instruction on circumstantial evidence. *People v Haney,* 86 Mich App 311, 318; 272 NW2d 640 (1978). No request was made to give the omitted instruction and the instruction given the jury did not misstate the law. Therefore, we fail to discern any reversible error on this ground." *Id.,* 157. (Emphasis in original.)

We find the trial court did not err in giving the instruction.

The third issue raised is whether the evidence was insufficient as a matter of law to support the conviction of the defendant as an accessory after the fact. The proper standard of review is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt". *Jackson v Virginia,* 443 US 307, 319; 99 S Ct 2781; 61 L Ed 2d 560 (1979), *People v Hampton,* 407 Mich 354; 285 NW2d 284 (1979).

In *People v Lucas,* 402 Mich 302, 304; 262 NW2d 662 (1978), the Michigan Supreme Court adopted from Perkins, Criminal Law (2d ed), p 667, the following definition of the common-law crime of accessory after the fact:

> "An 'accessory after the fact', at common law, * * *

is 'one who, with knowledge of the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial or punishment'."

The defendant only claims insufficiency of the evidence as to the element of "guilty knowledge of the felony". Defendant's knowledge of the felony was established through the prior testimony of Stanley Williams:

"*Q. [by Mr. Hutting]:* What did Mr. J. D. Williams say to you after you said what's happening man?
"*A.* He said we stuck up somebody.

\* \* \*

"*Q.* Did he [defendant] say what happened when they stuck up the place sir?
"*A.* He said they started shooting and a man got shot, he said a man got killed, a man got shot.
"*Q.* Did he indicate in any way sir if *[sic]* fired any guns?
"*A.* Yes.

\* \* \*

"*Q.* Did he indicate to you anything about Mr. England having a gun sir?
"*A.* Yes.
"*Q.* What did he say about that sir?
"*A.* J. D. spoke of it all, that he was just there. England was the one doing the whole thing and he just happened to be involved.

\* \* \*

"*Q.* Did Mr. Williams indicate to you what, if anything had been done with the guns sir?
"*A.* Yes.
"*Q.* What, if anything did he indicate?
"*A.* That he had taken the gun to a girlfriend's house."

The distinction between accessories before the fact and principals has been abrogated by statute,

MCL 767.39; MSA 28.979. An accessory after the fact remains a common-law offense, and case law dealing with accessories before the fact is not applicable. At common law, the conviction of the principal was essential to the prosecution of *any* accessory. This requirement was eliminated by the statute for all accessories before the fact:

"Now all are principals, and the guilt of one does not depend upon the guilt of the other. The effect of our statute is to permit the prosecution of one who aids and abets, without regard to the conviction or acquittal of one who, under the common law, would have been called the principal. That is what the statute intended to accomplish in abrogating the common-law rule. One who aids and abets may be charged and convicted as a principal. *People v Mangiapane,* 219 Mich 62 [188 NW 401 (1922)]." *People v Smith,* 271 Mich 553, 561; 260 NW 911 (1935).

However, the common-law requirement that the principal be convicted remained for the crime of accessory after the fact; it was unaffected by the statute which eliminated that requirement for accessory before the fact. The requirement has not been abrogated by Michigan case law; it is a question of first impression.

Several federal circuit courts of appeals have addressed this issue. Recent cases have held that conviction of the principal is not a necessary condition precedent to the conviction of an accessory after the fact. A jury can infer from evidence presented that the accused had the requisite knowledge and with that knowledge assisted the offender. *United States v Walker,* 415 F2d 530 (CA 9, 1969), *United States v Balano,* 618 F2d 624, 630 (CA 10, 1979), *United States v Bissonette,* 586 F2d 73 (CA 8, 1978), *United States v Norton,* 464 F2d 85, 86 (CA 5, 1972). The Colorado Supreme Court

has held that guilty knowledge is knowledge of the factual status of the perpetrator's guilt or innocence and not a knowledge of status as respects the perpetrator's liability or nonliability to be punished. *Oaks v People,* 161 Colo 561; 424 P2d 115 (1967). The trend is clearly that the principal need not be convicted before an accessory after the fact is tried. We adopt that position.

Assuming that defendant had the requisite knowledge of the felony, a factual question remains. Taking a wounded felon to the hospital cannot be construed as giving assistance to hinder his being apprehended. It was recognized even in early common law that comfort or assistance which had no tendency to frustrate the due course of justice was not included. Perkins, Criminal Law (2d ed), p 667, *Jones v State,* 137 Tex Crim App 146; 128 SW2d 803 (1939).

The only other act which was alleged to assist the codefendant in his escape was that defendant had taken the gun to a girl friend's house. Appellee cites *People v Farmer,* 196 NY 65; 89 NE 462 (1909). In *Farmer,* the accessory after the fact concealed evidence in a homicide case by secreting the corpse. An analogy can be made in this case, because defendant allegedly secreted the weapon used, which was not recovered.

Therefore, we find that there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that defendant had sufficient knowledge of the commission of an underlying felony to become an accessory after the fact when he hid the gun.

The fourth issue raised is whether the evidence was sufficient as a matter of law to support a finding of guilty of felony-firearm while an accessory after the fact. MCL 750.227b; MSA 28.424(2) states:

"(1) A person who carries or has in his possession a firearm at the time he commits or attempts to commit a felony, except the violation of section 227 or section 227a, is guilty of a felony, and shall be imprisoned for 2 years. Upon a second conviction under this section, the person shall be imprisoned for 5 years. Upon a third or subsequent conviction under this section, the person shall be imprisoned for 10 years."

There is no case on point. However, under a literal reading of the statute, a verdict finding a defendant guilty of being an accessory after the fact supplies the requisite felony for the application of the felony-firearm statute. In *Wayne County Prosecutor v Recorder's Court Judge,* 406 Mich 374, 398; 280 NW2d 793 (1979), the Court stated:

"The prosecution was not legally required to prove armed robbery. Any proper felony would have sufficed. Each of these statutes legally requires proof of a fact which the other does not. Proof of felony-firearm does not necessarily prove armed robbery. And, as in *Harris v United States* [359 US 19; 79 S Ct 560; 3 L Ed 2d 597 (1959)], the mere fact that one factual occurrence, there the possession of narcotics and here the possession of a gun, is employed to supply proof of an element of two distinct crimes does not violate the *Blockburger* rule [*Blockburger v United States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932)]. A substantial overlap of factual proofs is permissible. *Iannelli [v United States,* 420 US 770; 95 S Ct 1284; 43 L Ed 2d 616 (1975)]."

However, this Court cannot apply the felony-firearm statute to this situation. The defendant's conviction of being an accessory after the fact was based on two factors: (1) he took the principal to the hospital and (2) he took the gun to his girl friend's house. Defendant did not carry or possess a firearm while committing a felony; his felony conviction was based on his moving and hiding a gun. This is more analogous to the crime of carry-

ing a concealed weapon, which is excepted from the felony-firearm statute. In *Wayne County Prosecutor, supra,* 391, the Court summarized the legislative intent as follows:

"The language employed by the Legislature in the felony-firearm statute, especially when analyzed against the backdrop of the sentence enhancement and mandatory minimum sentencing provisions quoted above, leaves no doubt that the Legislature intended to make the carrying of a weapon during a felony a separate crime and intended that cumulative penalties should be imposed. The Legislature has clearly expressed its judgment that carrying a firearm during any felony which may, but need not necessarily, involve the carrying of a firearm, entails a distinct social harm inimical to the public health, safety and welfare which deserves separate treatment. In *order to deter the use of guns,* the Legislature has chosen to create a separate crime." (Emphasis added.)

In this case, the underlying crime, the alleged murder, was completed by the time defendant took codefendant to the hospital and allegedly transported the gun. The underlying crime certainly was a violent one, but the role that the jury found defendant played, that of an accessory after the fact, did not involve the use or attempted use of a gun in the commission of a felony. Therefore, the possession of a firearm conviction is reversed and the accessory after the fact conviction is affirmed.

Affirmed in part, reversed in part.